IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESO DE JESUS CARRILLO,

     Plaintiff,

v.                                          No. 1:19-cv-00863-MV-LF

CENTRAL TRUCKING, INC., et al.,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Ace American Insurance Company's ("Ace") motion to intervene in this lawsuit.  Doc. 6.  The issue presented in the motion is whether Ace—which paid workers' compensation benefits to Plaintiff Tereso De Jesus Carrillo—should be permitted to intervene under Rule 24 of the Federal Rules of Civil Procedure to assert a subrogation right to recover the benefits it paid Mr. Carrillo from any tort proceeds he may recover from Defendants.  United States District Judge Martha Vazquez referred the motion to me to issue a decision under 28 U.S.C. § 636(b)(1)(A).[1]  Doc. 15.  Having considered the parties' briefing, the proposed complaint in intervention (Doc. 5), and the relevant law, I conclude that the motion should be denied.

---

[1] 28 U.S.C. § 636(b)(1)(A) provides that "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . .  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

I.      **Background**

This personal injury lawsuit stems from a December 17, 2016, accident involving a commercial motor vehicle operated by Defendant Michael Fellers Morris.  Compl. ¶¶ 35–39.[2] The commercial motor vehicle was owned or leased by Morris's employer, Defendant Central Trucking, Inc. (CTI).  *Id*. ¶ 35.  At the time of the accident, Morris was acting in the course and scope of his employment with CTI.  *Id.* ¶ 3.

The accident occurred on westbound Interstate 40 in McKinley County, New Mexico.  *Id*. ¶¶ 10, 32.  At the time, traffic was backed up on the interstate due to road construction taking place near mile marker 16.  *Id*. ¶¶ 32–33.  As he approached this mile marker, Morris was allegedly travelling at 66 miles per hour, using the cruise control feature on the tractor-trailer rig he was operating.  *Id*. ¶¶ 35, 38.  The rig was equipped with a video camera system "which had the ability to record what was happening inside the tractor-trailer, as well as[ ] the roadway ahead."  *Id*. ¶ 36.  The recording system captured eight seconds preceding the accident and six seconds afterwards.  *Id*. ¶ 37.

The recording allegedly showed Morris looking down rather than at the roadway as he approached the slow-moving traffic near mile marker 16.  *Id*.  Morris allegedly did not direct his attention back to the roadway until he was one second away from a pickup truck in front of the rig.  *Id*. ¶ 38.  He was unable to avoid colliding with the pickup truck.  *Id*. ¶ 39.  The collision resulted in a fire and chain reaction of accidents on the interstate, which eventually caused an impact with Mr. Carrillo's vehicle.  *Id*.  At the time, Mr. Carrillo was en route to California.  *Id*.

---

[2] The Complaint is contained in Document 1 on the docket, but it is not separated from the Notice of Removal, which also is in Document 1.  Thus, for clarity, this Order refers to the Complaint (abbreviated as "Compl."), not the document number.

¶ 34.  As a result of the collision, Mr. Carrillo claims to have suffered "serious personal injuries, pain, suffering and disability, . . . lost wages and medical expenses." *Id.* ¶ 40.

## II.      Procedural History

On August 7, 2019, Mr. Carrillo filed suit in New Mexico's 11th Judicial District Court against Morris, CTI, and two other entities affiliated with CTI—CTI Leasing, LLC and CTI Logistics, Inc.  *Id.* ¶¶ 2–6.  In his four-count complaint, Mr. Carrillo asserts claims for: (1) negligence per se, negligence, intentional and reckless conduct, as well as respondeat superior liability (Count I); (2) negligent hiring, training, supervision and retention (Count II); and (3) joint venture or general partnership (Counts III and IV).  *Id.* ¶¶ 41–64.  On September 18, 2019, CTI removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1441(b).  *See* Doc. 1 (Notice of Removal).

Approximately three months after removal, Ace moved to intervene as a matter of right pursuant to Rule 24 of the Federal Rules of Civil Procedure.  Doc. 6.  In its proposed complaint-in-intervention, Ace asserts that it issued a workers' compensation policy to Mr. Carrillo's employer, South Star Logistics, Inc.  Doc. 5 ¶¶ 1–4.  At the time of the accident, Mr. Carrillo was acting in the course and scope of his employment.[3]  Doc. 6 at 2.  Following the accident, Mr. Carrillo "claimed benefits under [the] Workers' Compensation Laws of California, and [Ace], in accordance with its legal obligations, made payments to and for the benefit of [Mr. Carrillo]."  Doc. 5 ¶¶ 9, 26.  Ace claims to have already paid $34,486.52 in benefits and asserts that it may be obligated to pay future medical expenses and indemnity benefits to Mr. Carrillo.  *Id.* ¶¶ 25–26.

---

[3] Although Ace made this assertion in its motion (Doc. 6 at 2), it did not do so in its proposed complaint-in-intervention.  *See generally* Doc. 5.

In its motion, Ace seeks to intervene on the basis that it has a subrogation right to recover the benefits it provided to Mr. Carrillo.  Doc. 6 at 2; Doc. 5 ¶ 27 (asserting that Ace, "by reason of such past and future payments, is herein subrogated to the rights of Mr. Carrillo against Defendants in this suit, and it is entitled to recover . . . all sums that it has paid or may pay in the future").  Mr. Carrillo takes no position on the motion (Doc. 9), but Defendants filed a response in opposition on January 6, 2020 (Doc. 12).  On January 31, 2020, Ace filed a reply brief.[4]  Doc. 23.

### III.    Analysis

It is well established that "the right to intervene in a civil action pending in a United States District Court is governed by Rule 24 [of the Federal Rules of Civil Procedure] and not by state law."  7C Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1905 (3d ed.).  Choice-of-law issues nonetheless arise in motions to intervene, particularly in:

> diversity actions by an injured employee against a third party alleged to have been negligent in which an insurer that has paid worker's compensation to the employee seeks to intervene to enforce a right of subrogation against any recovery the employee may obtain.

*Id*.  Ace's motion to intervene presents this exact scenario.  Doc. 6.  Having paid workers' compensation benefits to Mr. Carrillo under California law, Ace now seeks to intervene in this diversity action filed by Mr. Carrillo against third parties for negligence arising out of an accident that occurred in New Mexico.  *Id*. at 2.  Before the Court can answer the question of whether Ace should be allowed to intervene in this lawsuit, it first must resolve the choice-of-law issues presented in the motion.  In doing so, the Court notes that "[s]tate law is relevant in

---

[4] Although Ace's reply brief was not timely filed, the Court considered the reply in its analysis. *See* D.N.M.LR-Civ. 7.4(a) ("A reply must be served and filed within fourteen (14) calendar days after service of the response.").

determining whether the insurer has a right of subrogation."  Wright et al., *supra*, § 1905.  "If the substantive right to subrogation exists, the mode, time, and manner of its assertion is a procedural matter to be determined by the federal rules rather than by state law."  *Id*.

A.   Choice-of-Law Analysis

"A federal court sitting in diversity looks to the forum state's choice-of-law rules to determine which state's substantive law to apply."  *Lopez v. Stanley Black & Decker, Inc.*, 764 F. App'x 703, 709 (10th Cir. 2019) (unpublished) (citing *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016)).  New Mexico is the forum state in this lawsuit. *Anderson v. Commerce Const. Services, Inc.*, 531 F.3d 1190, 1193 (10th Cir. 2008) ("we apply the choice of law rules of the state in which the district court sits.").

"New Mexico courts follow a two-step process in analyzing choice-of-law issues." *Lopez*, 764 F. App'x at 709.  The first step in a New Mexico choice-of-law analysis is "characterization:  deciding the area of substantive law—e.g. torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue."  *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 11, 140 N.M. 293, 296, 142 P.3d 374, 377 (emphasis removed).  Second, the Court applies "the New Mexico choice-of-law rule applicable to that category to determine which state's substantive law applies."  *Lopez*, 764 F. App'x at 709.

If the case is characterized as a tort action, New Mexico follows the "doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."  *Terrazas*, 2006-NMCA-111, ¶ 12, 140 N.M. at 296, 142 P.3d at 377.  The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place."  Restatement (First) Conflicts of Law § 377 & cmt. a (1934); *Terrazas*, 2006-NMCA-111, ¶ 12, 140 N.M.

at 296, 142 P.3d at 377 (stating that "the place of the wrong is the location of the last act necessary to complete the injury").  That being said, the place-of-wrong rule may give way when policy considerations outweigh its application.  *Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 613, 894 P.2d 386, 390; *see also In re Estate of Gilmore*, 1997-NMCA-103, ¶ 18, 124 N.M. 119, 124, 946 P.2d 1130, 1135 ("[P]olicy considerations may override the place-of-the-wrong rule.").  However, a court should "begin with a strong presumption in favor of application of the place-of-wrong rule, but [ ] not close [its] eyes to compelling policy arguments for departure from the general rule in specific circumstances."  *Id.* ¶ 21, 124 N.M. at 125, 946 P.2d at 1136.

When a case sounds in contract, New Mexico will generally apply the law of the state where the contract was executed, which is referred to as the choice-of-law doctrine of *lex loci contractus*.  *See State Farm Mut. Auto. Ins. Co. v. Ballard*, 2002-NMSC-030, ¶ 7, 132 N.M. 696, 698, 54 P.3d 537, 539; *Demir v. Farmers Texas County Mut. Ins. Co.*, 2006-NMCA-091, ¶ 8, 140 N.M. 162, 164–65, 140 P.3d 1111, 1113–14 ("When differences between the law of the forum state and the law of the state where the contract was executed concern only contract interpretation, we will apply the law of the state where the parties entered the contract.").  In addition, because "New Mexico respects party autonomy[,] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  *Fiser v. Dell Computer Corp.,* 2008-NMSC-046, ¶ 7, 144 N.M. 464, 467, 188 P.3d 1215, 1218.  There is a public policy exception to the *lex loci contractus* rule as well—specifically, "[t]o overcome the rule favoring the place where a contract is executed, there must be a countervailing interest that is fundamental and separate from general policies of contract interpretation."  *Demir*, 2006-NMCA-091, ¶ 8, 140 N.M. at 165, 140 P.3d at 1114.  "We will apply New Mexico law if

applying the law of another state would result in a violation of fundamental principles of justice of New Mexico." *Id*. (internal quotation marks omitted); *see also Fiser*, 2008-NMSC-046, ¶ 7, 144 N.M. at 467, 188 P.3d at 1218.

In its motion to intervene, without engaging in any choice-of-law analysis, Ace simply asserts that "by virtue of the [w]orkers' [c]ompensation [l]aws of California, . . . [it] is subrogated in law to the claims of Mr. Carrillo against Defendants." Doc. 6 at 2.  Defendants, on the other hand, characterize Mr. Carrillo's claims as sounding in tort, and applying the principle of *lex loci delicti commissi*, they contend that New Mexico law governs the substantive rights of the parties because the wrongful act—the accident—occurred in New Mexico.  Doc. 12  at 2.

In reply to Defendants' argument, Ace does not dispute that that the wrongful act occurred in New Mexico or that Mr. Carrillo's tort claims are governed by New Mexico substantive law.  Doc. 23  at 2 (acknowledging that the basis of Mr. Carrillo's complaint is "an accident that happened in New Mexico"); *id*. at 4 (stating that Ace's "subrogation rights do not have any affect on the application of the substantive law of tort and negligence under New Mexico laws" in this case).  Ace, however, argues that under the principle of *lex loci contractus*, California law applies because Mr. Carrillo obtained benefits under California's worker compensation laws in accordance with a California contract.[5]  *Id*. at 4.  Ace further asserts that its contractual rights would be "substantially damage[d]" if the Court were to apply the *lex loci delicti commissi* rule for tort actions.  *Id*.  Finally, Ace suggests that applying New Mexico substantive law to its contractual rights would be contrary to public policy.  *Id*. at 3.

---

[5] Ace does not specify whether this contract is the insurance policy Mr. Carrillo's employer entered into with Ace or Mr. Carrillo's employment contract.  The Court presumes that both contracts were entered into in California.

The parties' arguments above amount to a fundamental disagreement regarding the characterization of this case at the first step of New Mexico's choice-of-law analysis—that is, whether this case is a personal injury lawsuit governed by New Mexico law or a workers' compensation dispute governed by California law.  As explained more fully below, the Court will characterize this case as a tort-based action and apply the choice-of-law principle of *lex loci delicti commissi*.

In *Terrazas v. Garland & Loman, Inc.*, a personal injury case arising out of a construction accident that occurred in New Mexico, the New Mexico Court of Appeals rejected an argument similar to the one Ace makes in this case.  2006-NMCA-111, 140 N.M. 293, 142 P.3d 374.  There, a Texas workers' compensation insurer intervened in a personal injury lawsuit without opposition from the parties and asserted a subrogation right under Texas law to recover workers' compensation benefits it paid to the plaintiffs.  *Id.* ¶ 6, 140 N.M. at 295, 142 P.3d at 376.  At trial, the district court instructed the jury in accordance with Texas workers' compensation law.  *Id.* ¶¶ 7–9, 140 N.M. at 295–96, 142 P.3d at 376–77.  On appeal, the New Mexico Court of Appeals rejected the district court's analysis as well as the Texas insurer's argument that by virtue of its intervention, "the character of the lawsuit changed from a personal injury lawsuit governed by New Mexico tort law into a workers' compensation dispute governed by Texas law." *Id.* ¶ 13, 140 N.M. at 296–97, 142 P.3d at 377–78.  The Court instead characterized the plaintiffs' complaint as a tort action to which the doctrine of *lex loci delicti commissi* applied.  *Id.* ¶ 12, 140 N.M. at 296, 142 P.3d at 377.  Because the place of the wrong was a construction site in New Mexico, the Court concluded that New Mexico substantive law governed.  *Id.*  The Court emphasized that:

> The foundation of this lawsuit is New Mexico tort law.  Plaintiffs' affirmative
> right of recovery exists solely by virtue of the common law of New Mexico; it in

> no way depends upon Texas workers' compensation law.  [The Texas insurer's]
> right to subrogation is 'entirely derivative' of Plaintiffs' right to recover damages.

*Id.* ¶ 13, 140 N.M. at 297, 142 P.3d at 378; *see also Lopez*, 764 F. App'x at 710 (observing that

"[i]n conducting their characterization analysis, New Mexico courts assign great weight to the

underlying tort-based claim."); *cf. id.* (characterizing successor-liability issue as tort-based

because "liability turns on the viability of the underlying tort claim and not on principles of

contract enforcement").

Applying the above reasoning to this case, it is undisputed that Mr. Carrillo's claims are

entirely tort-based.  Mr. Carrillo's "affirmative right of recovery exists solely by virtue of the

common law of New Mexico" rather than California workers' compensation law.  *Terrazas*,

2006-NMCA-111, ¶ 13, 140 N.M. at 297, 142 P.3d at 378.  The parties have not identified any

contract-based issues in this case, even considering Ace's proposed complaint-in-intervention in

which Ace does not assert any causes of action independent of those raised by Mr. Carrillo.  *See*

Doc. 5 at 5 (In causes of action section of proposed complaint, Ace only asserts that it

"incorporates [Mr. Carrillo's] [c]omplaint for [p]ersonal [i]njury paragraphs 41 through 64

[which are Mr. Carrillo's tort-based claims].").  Thus, even in Ace's own view, its right to

recovery is entirely derivative of Mr. Carrillo's right to recovery.  Because liability in this case

turns solely on the viability of Mr. Carrillo's tort claims and not on principles of contract

enforcement or workers' compensation law, the Court  characterizes this as a tort-based action

and applies the choice-of-law principle of *lex loci delicti commissi*.  Under the place-of-wrong

rule, the wrongful act occurred in New Mexico and thus, New Mexico law governs.

Finally, although Ace makes a public policy exception argument, its argument consists of

a single sentence in its reply brief.  *See* Doc. 23 at 3 ("Applying New Mexico law regarding

[Ace's] subrogation right . . . would be contrary to the public policy and contractual rights of

[Ace].").  This, alone, is not enough for Ace to meet the "heavy burden" it has "to show that New Mexico would depart from its choice-of-law principles."  *See Lopez*, 764 F. App'x at 711 (citing *Reagan v. McGee Drilling Corp.*, 1997-NMCA-014, ¶ 9, 123 N.M. 68, 933 P.2d 867, 869 ("[C]ourts should invoke this public policy exception only in extremely limited circumstances." (internal quotation marks omitted)).  Mere differences among state laws is not enough to invoke the public policy exception.  *Id*.

### B.  Application of New Mexico Law

Under New Mexico law, a workers' compensation carrier such as Ace does not have a direct right of subrogation against third-party tortfeasors.  *Liberty Mut. Ins. Co. v. Salgado*, 2005-NMCA-144, ¶ 9, 138 N.M. 685, 688, 125 P.3d 664, 667 (New Mexico "courts have historically held that an employer/insurer does not have a statutory assignment or subrogation interest in a worker's third-party claim.").  Rather than having a subrogation interest, they have the right only to seek reimbursement from injured workers when such workers also recover from a third party. *Id*.  Workers' compensation carriers may pursue that right of reimbursement only against the worker, not against the third party, and "the employer/insurer does not own the right to enforce liability."  *Id.*  As such, "recovery by an employer/insurer of workers' compensation benefits paid to the worker depends upon the worker successfully pursuing a claim against a third-party tortfeasor responsible for the worker's injury."  *Id*. ¶ 10, 138 N.M. at 688, 125 P.3d at 667.  And "an employer's/insurer's statutory right of reimbursement is not effective until a worker recovers upon the third-party claim by verdict or settlement."  *Id.*

Accordingly, Ace does not have a right of subrogation in this lawsuit, and its right to reimbursement does not yet exist because that interest will only arise if Mr. Carrillo obtains a monetary recovery from Defendants, through either judgment or settlement.  Until then, Mr.

Carrillo should be permitted to pursue his claims against Defendants without interference from Ace. *Id.* ¶ 14, 138 N.M. at 689, 125 P.3d at 668 (noting the importance of balancing the workers' compensation carrier's "limited right of reimbursement against the overriding concern of a worker's right to litigate the third-party suit without interference"); *Martinez v. Gainey Transp. Services, Inc.*, 2010 WL 11619121, at *4 (D.N.M. Aug. 23, 2010) (stating that "the right to litigate the third party tort claim belongs exclusively to the worker, and permitting the employer or worker's compensation carrier to participate in the settlement negotiations or trial could prejudice the worker's rights").

The Court  therefore denies Ace's motion to intervene.  This does not mean that Ace has waived its right to recover the benefits it paid to Mr. Carrillo.  *See St. Joseph Healthcare Sys. v. Travelers Companies*, 1995-NMCA-020, ¶ 17, 119 N.M. 603, 608, 893 P.2d 1007, 1012 (under New Mexico law, "[t]he right to reimbursement is not waived by failure to participate in the trial of the workman's action against the third party.  That statutory right may be protected in a variety of ways . . . .  [One way is] by allowing intervention after judgment ha[s] been entered against the tortfeasor."); *Martinez*, 2010 WL 11619121, at *4 (indicating that the worker's compensation carrier could renew its motion to intervene "if and when [the worker] has established his right to a monetary recovery from defendants").

C.  <u>Alternatively, Ace has not Met the Requirements for Intervention</u>.

Lastly, even if the Court were to conclude that Ace had a right to subrogation, the motion to intervene is still subject to denial because Ace has failed to meet its burden of establishing intervention as a matter of right under Fed. R. Civ. P. 24(a)(2).[6]  Rule 24(a)(2) states that:

---

[6] Ace sought only to intervene as a matter of right in its motion.  Doc. 6 at 1.  In its reply brief, Ace asserted that it also meets the requirements for permissive intervention.  Doc. 23 at 4–5. Even if the Court were to overlook Ace's failure to raise permissive intervention in its initial

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  The Tenth Circuit has "construed the plain language of this rule to mean that 'a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties.'"  *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019)).  In its briefing, Ace failed to engage in any analysis of these requirements.  Docs. 6, 23.  Significantly, Ace did not address why its interest is not adequately represented by the existing parties or how its interest would be impaired if intervention is not allowed.  In this regard, Ace's failure to show how the requirements for intervention have been met constitutes an independent and alternate basis for denying the motion to intervene.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that Ace is not entitled to intervene in the lawsuit at this time.  The Court therefore DENIES the motion to intervene (Doc. 6).

Laura Fashing
United States Magistrate Judge

---

motion, the Court likewise finds that Ace failed to meet its burden to show that it has met the requirements for permissive intervention.